## A10A0774. OWEN v. WATTS.
### (695 SE2d 62)

JOHNSON, Presiding Judge.

Former foster parents Keith and Christine Owen filed this pro se appeal from the trial court's order denying their petition to adopt M. F. L.[1] For the reasons that follow, we affirm.

M. F. L. was born in March 2000. The child lived with her mother in the home of her maternal grandmother, Kathy Watts. In January 2005, for reasons that are not clear from the record, the Rabun County Department of Family and Children Services (DFACS) removed the child from her mother's custody and placed her in foster care with the Owens.[2] The plan was for long-term foster care, and the mother's rights were not terminated or surrendered.

In October 2006, the Owens petitioned to adopt the child. The next day, DFACS removed the child from the Owens' home and placed her back in Watts' home. In May 2007, the child's biological mother and legal father executed Voluntary Surrender of Parental Rights forms in favor of Watts. Watts petitioned to adopt the child, and that petition was granted. The Owens, who had intervened in the action, appealed from the trial court's order. In that case, a panel of this Court reversed the grant of Watts' adoption petition, holding that there was insufficient evidence in the record to show that it was in the child's best interest that she be adopted by Watts.[3] This Court noted that the trial court had found that the child had done well in the care of both the Owens and Watts, and also that there was evidence from which the trial court could have concluded that adoption by Watts was not in the child's best interest.[4]

In August 2009, Watts moved to intervene in or to dismiss the Owens' adoption petition. After a hearing, the trial court found that

---

[1] The style of this case shows only Christine Owen as the appellant, although the notice of appeal and appellate pleadings indicate that both Keith and Christine Owen are appellants.

[2] The mother was incarcerated on drug charges shortly after the child was removed from the home.

[3] *Owen v. Watts,* 296 Ga. App. 449, 449-450 (674 SE2d 665) (2009).

[4] Id. at 452.

the Owens lacked standing to pursue the adoption. The court further found that even if the Owens had standing, the court was not satisfied that adoption by the Owens would be in the best interest of the child. The court noted that the child had not lived with the Owens since October 2006, that she has thrived in Watts' care, and that she is happy, well-adjusted, and secure. The trial court denied and dismissed the Owens' adoption petition. The Owens appeal from that order.

1. The Owens contend the trial court erred in holding they did not have legal standing to pursue the adoption, when they had standing under OCGA § 19-8-5. OCGA § 19-8-5 (a) states that a child may be adopted by a third party who is neither the stepparent nor relative of the child *only if each such living parent has voluntarily and in writing surrendered his rights to the child to that third person* for the purpose of enabling that person to adopt the child. However, the parents surrendered their rights in favor of Watts, not the Owens. Thus, the Owens cannot rely on that statute for standing.

2. The Owens contend the trial court erred by disregarding OCGA § 49-5-281 (a) (20). OCGA § 49-5-280 et seq., known as the Foster Parents Bill of Rights, provides in OCGA § 49-5-281 (a) (20) that foster parents have the right to be considered, where appropriate, as the first choice as a permanent parent for a child who, after 12 months of placement in the foster home, is released for adoption or permanent foster care. The Owens point out that the child was in their foster home for more than 12 months and urge that the child had been released for adoption by her parents and was also released for permanent foster care by DFACS.

It is clear from a review of the Foster Parents Bill of Rights that the statute's purpose is "to acknowledge foster parents as . . . members of [the child welfare] system and to support them" in certain enumerated ways.[5] It gives the foster parents the right to such things as training, information, and timely reimbursement from the Department, refusal of placement, etc. However, the statute says nothing about foster parents' legal rights regarding adoption. The most it does regarding adoption "rights" is to state that the foster parents have the right to *"be considered, where appropriate*, as the first choice as a permanent parent" for a child who has been released by the Department. Assuming the "where appropriate" standard has been met, it is clear the Owens have been "considered" throughout this process.

And, as the trial court noted in its order, foster parents alleging

---

[5] OCGA § 49-5-281 (a).

any violation of the statute have the right to file a grievance with the Department of Human Services.[6] If the Owens felt their rights under the statute were violated, they had an administrative remedy available, but they did not pursue it.

Moreover, the Foster Parents Bill of Rights does not obviate the requirement that the Department, as the child's legal custodian, consent to the proposed adoption before an adoption can take place. OCGA § 19-8-13 (a) (2) (B) requires that the written consent of the Department be filed with the petition for adoption. Without the Department's release of the child and consent to the adoption, Georgia law provides no right for foster parents to adopt.[7] Indeed, the Department has absolute discretion whether to give consent to a petition for adoption.[8]

3. The Owens contend the trial court erred in finding the adoption was not in the child's best interest when there was evidence that they would provide a good home. Assuming, without deciding, the Owens had standing, the argument presents no basis for reversal.

Under OCGA § 19-8-10 (a), the trial court is authorized to grant an adoption petition in the absence of surrender or termination of parental rights where, among other things, the court is of the opinion that the adoption is in the best interest of the child, after considering the physical, mental, emotional and moral condition and needs of the child. Similarly, OCGA § 19-8-18 (b) provides, in relevant part, that where the parents have surrendered their rights to the child and the petitioner has met his burden of proving that the requested adoption is in the best interest of the child, it shall grant the adoption. It is well established that children need permanence of home and emotional stability or they will likely suffer serious emotional problems.[9]

In this case, the trial court found that the Owens were capable of providing for the child's physical needs, but the court was not convinced that the child's emotional needs would also be satisfied. The court found that based on the evidence and testimony, the child has settled into a content life with Watts, her maternal grandmother, and it would not be in her best interest emotionally to be uprooted again. Because the trial court sits as judge and jury, it is vested with broad discretion to determine whether the adoption petition is in the best interest of the child, and we will accept the trial court's decision

---

[6] OCGA § 49-5-281 (c).

[7] See *Drummond v. Fulton County Dept. of Family &c. Svcs.*, 237 Ga. 449 (228 SE2d 839) (1976).

[8] Id. at 450.

[9] *In the Interest of T. W. O.*, 283 Ga. App. 771, 777 (1) (a) (iv) (643 SE2d 255) (2007).

if there is any evidence to support it.[10] There is evidence to support the decision, and it is accepted.

4. The Owens contend the trial court erred in disregarding this Court's holding in the prior case.[11] They urge that the Court of Appeals' previous reversal of the grant of Watts' adoption petition required a grant of the Owens' petition to adopt the child. Assuming, again without deciding, that the Owens had standing to file the adoption petition, this argument lacks merit.

In an adoption proceeding, the court considers many factors, including whether the adoption requested is in the child's best interest.[12] In the prior appeal, this Court decided that there was no record evidence supporting a finding that an adoption by Watts was in the child's best interest. That holding does not demand a finding that an adoption by the Owens is in the child's best interest.

5. The Owens urge that the child has no stability or security in Watts' care. They argue that merely being in Watts' home has not given her security or stability when the home is unsafe and unstable.[13] As stated above, however, there was evidence supporting the trial court's decision that the child has been doing well living with Watts for the last few years and should not be moved again. The trial court did not abuse its discretion.[14]

6. The Owens contend the trial court erred in ignoring and disregarding the fact that a juvenile court custody order is void and possibly fabricated. It is not clear from the brief what order the Owens refer to, although they cite page 223 of the record. On that page is an amendment or correction to a January 2008 custody order. The Owens' appeal, however, is from the trial court's October 2009 order denying their adoption petition. Thus, the argument regarding an earlier custody order is not relevant to the issues properly before us on appeal.

7. The Owens contend the trial court lacked authority to leave M. F. L. with Watts when it denied the Owens' adoption petition. They cite OCGA § 19-8-18 (d), which provides that in an adoption petition brought pursuant to OCGA § 19-8-5 (or certain other sections not at issue here), if the court is not satisfied that the adoption is in the child's best interest, it shall deny the petition and

---

[10] *Rokowski v. Gilbert*, 275 Ga. App. 305, 306 (2) (620 SE2d 509) (2005).

[11] *Owen*, supra.

[12] Id. at 451.

[13] From what can be gleaned from the brief, the Owens are apparently referring to allegations that the child's uncle and brother sexually abused the child, and evidence that Watts moved several times in five years and failed several DFACS home inspections (though it is not clear from the record when or why she failed the inspections).

[14] See *Rokowski*, supra.

commit the child to the custody of the Department or to a child-placing agency. According to the Owens, the trial court should have removed the child from Watts' custody upon denying the petition.

However, as discussed in Division 1, the Owens' petition could not be brought pursuant to OCGA § 19-8-5, so OCGA § 19-8-18 (d) is inapplicable. Note that OCGA § 19-8-18 (d) would apply in the event *Watts'* pending petition for adoption (brought pursuant to OCGA § 19-8-7) were denied, but even then the trial court would be authorized to leave the child in Watts' custody if she were fit to have custody.[15]

8. Both parties have filed numerous motions in this case. Some of the motions have been withdrawn, and others are still pending. As to those motions that remain pending, they are either rendered moot or are hereby denied.[16]

*Judgment affirmed. Miller, C. J., and Phipps, J., concur.*

DECIDED APRIL 13, 2010 —
RECONSIDERATION DENIED APRIL 29, 2010 — 

Christine Owen, *pro se.*
Merlinus G. Monroe, Claiborne, Outman & Surmay, James B. Outman, for appellee.

---

[15] OCGA § 19-8-18 (d).

[16] Owen's Motion to Supplement the Record is denied. Owen's Motion to Unseal Parts of the Record was withdrawn as moot. Owen's Amended Motion to Supplement the Record is denied. Owen's Emergency Motion Pursuant to Court of Appeals Rule 40 (b) is denied. Watts' Motion for Release of Record is moot. Watts' Motion for Sanctions is denied.