[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10318
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-03834-WSD


SHARON NANETTE WHITE,
JESSE WHITE,

                                                            Plaintiffs-Appellants,

versus

BANK OF AMERICA BANK, NA,
THE LAW FIRM OF MCCALLA RAYMER, LLC,

                                                            Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(December 29, 2014)

Before ROSENBAUM, JILL PRYOR, and BLACK, Circuit Judges.

PER CURIAM:

Sharon Nanette White and Jesse White, proceeding *pro se*, appeal the district court's dismissal, for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., of their civil complaint against Bank of America, N.A. ("BANA"), and the law firm of McCalla Raymer, LLC ("McCalla Raymer"). In their complaint, the Whites alleged, among other things, that BANA and McCalla Raymer had wrongfully foreclosed on their property and violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* On appeal, they contend that the district court improperly considered certain evidence at the motion-to-dismiss stage; BANA lacked authority to foreclose on the property; the court misconstrued the Whites' FDCPA claims; the Whites stated viable claims under the FDCPA; and the court erred in denying their motion for reconsideration of the dismissal. After careful review, we affirm.

## I.

In April 2009, Sharon White obtained a loan in the amount of about $300,000 and executed a promissory note ("Note") in favor of First Option Mortgage ("First Option"). Repayment of the loan was secured by a deed ("Security Deed") to real property located at 1075 Colony Trail, Fairburn, Georgia ("Property"). The Whites executed the Security Deed in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for First Option. The Security Deed granted MERS and its assigns a power of sale.

In February 2010, the Whites received a letter from BAC Home Loans Servicing, LP ("BAC"), stating that BAC was the servicer of the Note and that the Note was in default. The letter also indicated that BANA was the Note holder. On May 16, 2011, MERS assigned its rights under the Security Deed ("Assignment") to BAC, which, in July 2011, merged with and into BANA.

In September 2012, McCalla Raymer, on behalf of BANA, sent the Whites a letter stating that the amount of the debt owed on the loan was about $340,000 and that the debt was owed to BANA. The letter contained the disclaimer, "EXCEPT AS MAY BE NOTED HEREIN, THIS IS AN ATTEMPT TO COLLECT A DEBT." Six days later, McCalla Raymer sent the Whites another letter indicating that the Whites had defaulted on their loan obligations and that a foreclosure sale of the Property was scheduled for the first Tuesday of November 2012. This letter contained a similar disclaimer stating that it was an attempt to collect a debt. The Notice of Sale Under Power included with the letter states that the Property was being sold pursuant to the power of sale contained in the Security Deed and that the sale was to be conducted by BANA. It does not appear that the foreclosure sale occurred.

In October 2012, the Whites filed a *pro so* complaint in Georgia state court, asserting claims of wrongful foreclosure and violations of the FDCPA. Among other things, the Whites alleged that BANA lacked authority to foreclose on the

Property because BANA did not hold the Note and it was not the assignee of the Security Deed.  The Whites further alleged that the defendants falsely represented that BANA was the Whites' secured creditor.  McCalla Raymer then removed the action to the United States District Court for the Northern District of Georgia based on federal-question jurisdiction, 28 U.S.C. § 1441(a).  After removing the case, BANA and McCalla Raymer moved to dismiss the complaint for failure to state a claim.  BANA filed with its motion to dismiss an allonge[1] to the Note, which indicated that First Option had endorsed the Note in favor of Countrywide Bank, FSB ("Countrywide").  It appears that Countrywide then merged with and into BANA.

The district court granted the defendants' motion to dismiss, finding that BANA was the holder of the Note and the Security Deed and was entitled to foreclose on the Property.  The court further determined that the Whites had failed to state a viable claim under the FDCPA, concluding that BANA did not qualify as a "debt collector" under 15 U.S.C. § 1692e, that McCalla did not send false or misleading communications related to debt collection within the meaning of § 1692e, and that neither defendant had violated 15 U.S.C. § 1692f(6).

---

[1] "An allonge is a piece of paper attached to a promissory note on which parties write endorsements for which there is no room on the instrument itself." *Ware v. Multibank 2009-1 RES-ADV Venture, LLC*, 758 S.E. 2d 145 (Ga. Ct. App. 2014) (quotation marks omitted).

4

The Whites timely moved for reconsideration of the dismissal, contending that BANA did not have the authority to foreclose on the Property for various reasons and that the court failed to address the bases for their FDCPA claims.  The district court denied the motion, and this appeal followed.[2]

## II.

We review *de novo* a district court's grant of a motion to dismiss for failure to state a claim under Rule 12(b)(6).  *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012).  We accept the complaint's allegations as true and construe them in the light most favorable to the plaintiff.  *Id.*  The factual allegations in the complaint must be sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007).  In essence, the complaint must "contain enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570, 127 S. Ct. at 1974.  We have stated that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).  We also review *de novo* the district

---

[2]  The Whites also raise for the first time on appeal a claim for intentional infliction of emotional distress.  We will not consider this claim on appeal because it was not raised before the district court.  *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).  The Whites did allege claims in the district court for trespass and for violations of both state and federal laws governing notice of foreclosure, but they have failed to raise any argument pertaining to these claims on appeal.  Therefore, we consider them abandoned.  *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (stating that "issues not briefed on appeal by a *pro se* litigant are deemed abandoned").

5

court's interpretation of a statute.  *Reese v. Ellis, Painter, Ratterree & Adams LLP*, 678 F.3d 1211, 1215 (11th Cir. 2012).  We liberally construe the pleadings of *pro se* litigants, but we nevertheless require them to conform to procedural rules. *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007).

### III.

### A.

Regarding their wrongful-foreclosure claims, the Whites first contend that the district court erred by considering documents attached to BANA's motion to dismiss.  They object specifically to the allonge to the Note, which indicates that the Note was transferred to Countrywide and then endorsed by BANA.

When considering a motion to dismiss, the district court is limited to the face of the complaint and any attachments thereto.  *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).  Here, that includes the Security Deed and the Note, which were attached to the Whites' complaint.  *See id.* If the court considers matters outside of the complaint, the court generally must convert the motion to dismiss into a motion for summary judgment and afford the parties notice and an opportunity to supplement the record.  *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1267 (11th Cir. 2002).  But an exception to this conversion rule exists, where the "the attached document is (1) central to the plaintiff's claim and (2) undisputed.  In this context, 'undisputed' means that the

6

authenticity of the document is not challenged." *Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

Here, the district court found that the allonge was properly before it at the motion-to-dismiss stage because it was central to the Whites' claims, and the Whites contested only its validity, not its authenticity. For their part, the Whites contend that they did, in fact, challenge the authenticity of the allonge in the district court. A review of the record corroborates that assertion. Specifically, in their "Omnibus" response to the defendants' motions to dismiss, the Whites contended that the allonge was unauthenticated because it did not disclose the date on which it was produced or any reference number, loan number, or Federal Housing Authority account number associating the document with the Whites' mortgage loan. Therefore, assuming that the allonge was central to the Whites' claims, the district court likely erred in considering the document at the motion-to-dismiss stage because its authenticity was disputed. *See Day*, 400 F.3d at 1276. Therefore, we do not consider the allonge in deciding this appeal.

Nevertheless, the Whites cannot show that they stated a plausible claim for wrongful foreclosure. *See Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. To state a claim for wrongful foreclosure under Georgia law, a plaintiff must allege facts that establish "a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it

7

sustained, and damages." *Racette v. Bank of Am., N.A.*, 733 S.E. 2d 457, 462 (Ga. Ct. App. 2012) (quotation marks omitted).    The Whites generally contend on appeal that BANA lacked an interest in either the Note or the Security Deed, so it could not have foreclosed.    Our review of the complaint and the other evidence properly before the court, however, shows that BANA validly possessed the Security Deed, which was sufficient on its own for BANA to have instituted foreclosure proceedings against the Property.

First, the Security Deed was validly transferred by assignment to BAC. Georgia law authorizes the transfer of deeds to secure debt, O.C.G.A. § 44-14-64, and the Security Deed specifically authorized MERS to assign its interests in the Security Deed to other parties.[3]    Moreover, the Whites, as third parties to the Assignment, lacked standing under Georgia law to challenge the validity of the assignment.    *Montgomery v. Bank of Am.*, 740 S.E. 2d 434, 438 (Ga. Ct. App. 2013).

Second, when BAC merged with and into BANA, the rights and interests BAC had in the Security Deed were transferred to and vested in BANA without any further deed or transfer.    *See Nat'l City Mortg. Co. v. Tidwell*, 749 S.E. 2d 730, 733 (Ga. 2013) ("When corporations merge, state law provides that the title to each

---

[3]    The Whites did not challenge the authenticity of the Assignment in the district court, and they do not argue on appeal that the court erred in considering the Assignment at the motion-to-dismiss stage.    Therefore, we rely on the document.

corporation's property vests in the surviving corporation without any conveyance, transfer, or assignment[.]"); O.C.G.A. § 7-1-536(c).  The Whites' argument that this merger rule does not apply because BANA is a federally chartered bank is unavailing.  *See* 12 U.S.C. § 215a(e) (providing that, when two banks merge and continue in a receiving association, "[a]ll rights, franchises, and interests of the individual merging banks or banking associations in and to every type of property . . . shall be transferred to and vested in the receiving association by virtue of such merger without any deed or other transfer.").

Third, as the holder of the Security Deed, BANA was entitled to exercise the power of sale in the Deed in order to foreclose on the Property, whether or not BANA also held the underlying promissory note.  *See You v. JP Morgan Chase Bank*, 743 S. E. 2d 428, 433 (Ga. 2013) ("Under current Georgia law, the holder of a deed to secure debt is authorized to exercise the power of sale in accordance with the terms of the deed even if it does not also hold the note or otherwise have any beneficial interest in the debt obligation underlying the deed.").  Therefore, BANA was authorized to institute foreclosure proceedings based on the Security Deed.

**B.**

Next, the Whites contend that they stated plausible claims against McCalla Raymer[4] for violations of the FDCPA under §§ 1692e(8) and 1692f(1).[5]  The FDCPA imposes civil liability on "debt collectors" for certain prohibited debt-collection practices.  *See Reese*, 678 F.3d at 1216.  Under the FDCPA, a "debt collector" is one who engages "in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6); *Reese*, 678 F.3d at 1218.

The FDCPA prohibits a debt collector from, among other things, using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  This includes "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."  *Id.* § 1692e(8).  Debt collectors also "may not use unfair or unconscionable means to collect or attempt to collect any debt."  *Id.*

---

[4]  Because the Whites do not challenge the dismissal of these claims with respect to BANA, we deem these claims abandoned. *See Timson*, 518 F.3d at 874.

[5]  At various points in their brief on appeal and in the district court, the Whites referenced § 1692f(8), which prohibits using language or symbols unrelated to the collector's business name on an envelope to collect a debt.  The Whites made no allegations regarding improper symbols.  In context, it appears that the Whites meant to refer to § 1692e(8), which concerns false communications regarding a person's credit information, including the failure to communicate that a disputed debt is disputed.  We construe their arguments accordingly.

10

§ 1692f.  And debt collectors may not collect "any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id*. § 1692f(1).

A "debt" for purposes of the FDCPA includes the Note at issue.  *Reese*, 678 F.3d at 1216-17.  It is also clear that McCalla Raymer's letters were an attempt to collect that debt, as evidenced by the demand for payment and the clear language in the letters stating, "THIS IS AN ATTEMPT TO COLLECT A DEBT."  *See id.* But this is as far as the Whites' argument goes.

The factual allegations in the complaint, accepted as true, do not plausibly show that McCalla Raymer violated either § 1692e(8) or § 1692f(1).  First, the Whites alleged no facts, only a conclusory assertion that McCalla Raymer "regularly attempt[ed] to collect debts."  *See* 15 U.S.C. § 1692a(6); *Reese*, 678 F.3d at 1218 (finding that where the complaint alleged that the law firm was "engaged in the business of collecting debts owed to others incurred for personal, family[,] or household purposes[]" and where it further alleged that in the year before the complaint was filed, the firm had sent more than 500 people "dunning notice[s]" containing "the same or substantially similar language" to that found in the letter and documents attached to the complaint, the complaint contained enough factual content to allow a reasonable inference that the law firm was a "debt collector").

11

But even setting this deficiency aside, second, the Note attached to the Whites' complaint authorized the lender to demand payment in full in the event of default. Consequently, the instrument expressly authorized the payment demanded by McCalla Raymer. *See* 15 U.S.C. § 1692f(1).

Third, the complaint contains no factual allegations in support of a claim under § 1692e(8). Nor do the Whites otherwise explain how McCalla Raymer violated that section.

Finally, to the extent that the Whites contended that McCalla Raymer used "any false, deceptive, or misleading representation or means in connection with the collection of any debt" under § 1692e, they have failed to brief this issue on appeal. "While we read briefs filed by *pro se* litigants liberally, issues not briefed on appeal by a *pro se* litigant are deemed abandoned." *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (citations omitted). The Whites, therefore, have abandoned this issue.

## C.

Finally, the Whites contend that the district court erred in denying their motion for reconsideration. We review a district court's ruling on a motion for reconsideration for an abuse of discretion. *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1254 (11th Cir. 2007). The Whites' motion for reconsideration largely mirrors their brief on appeal. In light of our disposition of the arguments above,

12

we conclude that the district court did not abuse its discretion in denying the Whites' motion for reconsideration.

## IV.

In sum, we affirm the district court's dismissal of the Whites' complaint for failure to state a claim under Rule 12(b)(6), and we affirm the denial of their motion for reconsideration of that dismissal.

**AFFIRMED.**